IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:19-961-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| DAVID LOWELL MOZINGO ) | |
| _____ ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 441). The defendant contends that the threat of COVID-19 and variants puts him at an extraordinary risk due to his medical conditions. He seeks a reduction of his sentence to time-served. He also asserts that his 84-year-old mother is disabled, needs a full time care giver, and there are no other relatives willing to take on that responsibility but him.

The government opposes the defendant's motion, arguing that the defendant fails to present extraordinary and compelling circumstances to warrant his release and that the § 3553(a) factors weigh heavily against his release. The defendant did not reply thereto.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## PROCEDURAL HISTORY

The defendant and his wife were involved in a conspiracy from approximately 2013 to February 2020 distributing quantities of oxycodone and fentanyl in South Carolina, Tennessee, and Kentucky. The defendant was also involved in purchasing counterfeit and genuine oxycodone pills from a source in Mexico for distribution purposes. Investigators seized approximately 22 firearms, a silencer, numerous rounds of ammunition, and assorted controlled substances from the defendant's home where his wife and two minor sons resided.

In February 2020, the defendant and his wife, Jennifer Mozingo,[1] were charged in a 7-count Superseding Indictment with the following:

Count 1: possession with intent to distribute and to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl) and oxycodone, both Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C); all in violation of 21 U.S.C. § 846;

Count 3: possession with intent to distribute and did distribute a quantity of oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Count 4: possession with intent to distribute a quantity of oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

---

[1] Although the defendant was not named in Count 2, his co-defendant wife pleaded guilty to Count 2 which charged possession with intent to distribute and distribution of 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N[l-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl) and a quantity of oxycodone, both Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(B), and 841(b)(1)(C).

Count 5:     possession of firearms and ammunition having previously been convicted of a crime punishable by imprisonment for a term exceeding one year and knowing that he had been convicted of such a crime; in violation of 18 U.S.C. § 922(g)(l), 924(a)(2), and 924(e);

Count 6:     possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(l)(A)(i); and

Count 7:     possession of a firearm, to wit, a cylindrical metal device that is a "firearm silencer" and a "firearm muffler," which was not identified by a serial number as required by Chapter 53 of Title 26, in violation of 26 U.S.C. §§ 5861(i) and 5871.

The criminal case was originally assigned to the Honorable J. Michelle Childs.[2] The defendant pleaded guilty before Judge Childs in January 2021 to Count 1 (lesser included offense)[3] and Count 6 pursuant to a written Plea Agreement (ECF No. 101).

The Presentence Report (PSR) (ECF No. 182) prepared by the United States Probation Office determined that the defendant's criminal history category was IV (based on 9 criminal history points). With a total offense level of 31, his Guideline sentencing range was 151 to 188 months, plus a mandatory 60-month sentence for the firearm charge.

The PSR set out the drug amounts attributable to the defendant for Guideline sentencing purposes. Those drugs included counterfeit oxycodone pills containing fentanyl, oyxcodone, fentanyl, heroin, amphetamine, alprazolam, and Adderall. The defendant and

---

[2] This case was assigned to the undersigned for sentencing when Judge Childs was elevated to the D.C. Circuit Court of Appeals.

[3] Conspiracy to Possess with Intent to Distribute and to Distribute 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl and Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.

his wife frequently acquired quantities of drugs from California and Mexico, and from large-quantity prescriptions written by the defendant's physician. The defendant was held accountable for the possession with intent to distribute 28,191.98 kilograms of converted drug weight and possession of a firearm in furtherance of a drug trafficking crime.

The defendant moved for a variance based on his health, his cooperation, and the drug calculations. At the defendant's sentencing hearing before this court on May 15, 2023, the defendant withdrew his objections and the court accepted the PSR. After granting the government's motion for a downward departure, this court sentenced the defendant to 51 months on Count 1 and 60 months consecutive on Count 6, in addition to four years of supervision.

The defendant did not appeal his conviction or sentence nor has he filed a motion to vacate or correct his sentence under 28 U.S.C. § 2255.

The defendant is currently 54 years of age and his date of release from the BOP is scheduled for September 2027. He is presently housed at Butner Correctional Institution Low.

## STANDARD OF REVIEW

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v.*

*Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024).  First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022).  After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195.  The defendant bears the burden to establish that he or she is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024).  Relevant here, an amended Sentencing Guidelines policy statement went into effect in November 2023 and provides criteria for determining the existence of extraordinary and compelling reasons for release. Generally, the list of circumstances qualifying as extraordinary and compelling falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. U.S.S.G. § 1B1.13(b).

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the Bureau of Prisons

(BOP) bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government does not dispute the defendant's exhaustion of his administrative remedies. Thus, the court will proceed to review the matters on the merits. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).

## DISCUSSION

The Sentencing Commission issued a policy statement, amended in November 2023, that governs reduction of sentences under § 3582(c)(1)(A). The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(A). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(B). Third, extraordinary and compelling reasons exist

when the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in heath or death." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(C).

### I. *Medical Conditions*

In this motion for compassionate release (ECF No. 196), the defendant claims that the threat of COVID-19 and today's new variants continue to pose an "extraordinary" risk to his health. He also avers that FCI Butner is ill-equipped to contain the spread of COVID from becoming a de facto death sentence for him. He claims that he was recently diagnosed with multiple debilitating medical conditions. This court has reviewed the defendant's BOP medical records filed under seal by the government (ECF No. 217).

Specifically, the defendant states that he suffers long COVID symptoms such as headaches and shortness of breath which are exacerbated by his other conditions. He states that he has chronic venous insufficiency, hypertension, obesity, Type II diabetes, and thyroid issues. He claims that due to a delay in his medical treatment at the BOP, his left lower leg had to be amputated. He also states that he has suffered major depression while in the BOP.

The government notes that the defendant had many of these health problems well before he committed the instant offenses including deep vein thrombosis, blood clots in his lungs, and a heart attack resulting in the placement of a stent in 2003. The defendant has

been overweight since his 2001 conviction[4] where he weighed 350 pounds and he has had a thyroid condition since 2002. Also, the defendant's diabetes is non-insulin dependant with neuropathy which is managed with lifestyle and medication. He is housed at FCI Butner which is level 4 care facility.

The government reports that the defendant has received ongoing medical care including seeing specialists at Duke University Medical, surgeries, and physical therapy. After his leg amputation at Duke, the defendant noted that his diabetes was under control and he was no longer taking medication for it.

The government further notes that the defendant does not claim that he struggles to provide self-care and he has failed to show and physical or mental condition that substantially diminishes his ability to provide self care in a correctional environment. The defendant's medical conditions are managed with lifestyle and medication.

Although the defendant asserts that his condition requires long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death, the government opines that the defendant's extensive medical records rebut that claim.

As for the defendant's concern for his health if there was an ongoing outbreak of infectious disease, the government reports that as of the date of its opposition filing (May 6,

---

[4] The defendant pleaded guilty in 2001 to credit card fraud and mail fraud (3:03-422-JFA). This court sentenced the defendant on August 18, 2003 to 37 months on Count 1, 37 months on Count 8, those terms to run concurrently to the 41 month custody sentence previously imposed in CR 3:01-364.

2025), FCI Butner had two active COVID-19 cases out of an inmate population of 4,156.

Notably, on May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. The public health emergency prong in U.S.S.G. § 1B1.13 requires that the emergency be declared by an appropriate governmental authority. As of the date of this order, there is no new declared emergency involving the BOP or the public in general.

The defendant is 51 years of age. The initial Presentence Report (PSR) (ECF No. 146) prepared in early 2022, noted that the defendant stood 6' 6" tall and weighed 294 pounds. The defendant reported that he was in fair health, though he suffered from severe arthritis in his back, hands, and legs. The PSR referenced his deep vein thrombosis, and the fact that he had suffered a heart attack in 2003 or 2004 while he was incarcerated at the BOP for a different criminal offense. The defendant stated that he was diagnosed with thyroid cancer in November 2020 and reported to have contracted COVID while detained at the Lexington County Detention Center. His prescribed medications at the time included Synthroid 125mg; Metformin ER 750 mg twice each day; Glipzide ER 10 mg; Eliquis 2.5 mg twice each day; omeprazole 40 mg twice each day; furosemide 40 mg; Simvastin 10 mg; and lisinopril 5mg.

The defendant had most of these medical problems when he committed the crimes that resulted in his current sentence or prior to that time. Thus, an argument could be made that it would be a perverse system of justice to allow a defendant with a substantial criminal

record to commit yet another crime and then, upon sentencing, argue for his immediate release, relying upon medical conditions that pre-dated his current offense. This would result in sentencing disparity because it would allow individuals who have severe medical problems the ability to seek leniency at sentencing, whereas healthy individuals who commit the same crimes do not have the same opportunity.

This court agrees with the government that there is nothing extraordinary and compelling about the defendant's present medical conditions. None of the claimed medical conditions qualify as a serious physical or medical condition that would diminish the defendant's ability to provide self care within the BOP and from which he is not expected to recover. Nor does the defendant require long-term or specialized care that is not being provided for. *See* U.S.S.G. § 1B1.13, cmt. N.1(b)(1)(B). Accordingly, this claim is denied.

## II. *Family Circumstances*

The defendant claims that he needs to care for his mother who is 84 years old, had brain surgery in 2024, and requires full time home care. However, the defendant does not provide any proof that his mother is incapacitated or that he is the sole care giver for her. While it is unfortunate that the defendant's siblings have passed away, there appears to be adult grandchildren who could care for their grandmother. The defendant does not state who has been taking care of his mother since his incarceration 5 years ago. In addition, the defendant's wife and co-defendant, Jennifer Mozingo (who was sentenced by this court to 33 months incarceration on May 17, 2023) is now in a halfway house and her anticipated

release date is January 2026.

The court does not find this to be an extraordinary and compelling claim for compassionate release, nor has the defendant met his burden to prove the same.

### IV. *Factors Under 18 U.S.C. § 3553(a)*

The government argues that even if the defendant had presented extraordinary and compelling reasons (which this court has determined herein that the defendant does not), the court should deny his motion in light of the statutory sentencing factors under 18 U.S.C. § 3553(a), because the factors weigh heavily against the defendant's release.

The government first notes that the defendant has already received a sentence of less than half of his actual Guidelines due to the government's motion for a departure. This court conducted a detailed analysis of the §3553(a) factors at his sentencing in 2022.

As the government points out, the defendant was the leader of a large-scale drug trafficking conspiracy distributing more than 100,000 illicit and dangerous pills from 2013 to 2019. The defendant has a 27-year criminal history including 12 convictions, three of which were federal, along with revocation proceedings, and several felonies earning a criminal history of IV. The government also notes that the defendant and his co-defendant wife used their home as a stash house with their two minor children and were in possession of 22 firearms. Finally, the government states that although the defendant has some medical conditions, those ailments did not deter his participation in criminal activity.

With regard to post-sentencing conduct, the court notes that the defendant has taken numerous educational courses and completed the Non-Residential Drug Abuse Treatment Program. The defendant attests that he has had no disciplinary infractions during his 5-year incarceration. The defendant states that because he now physically disabled, he will apply for Social Security Disability Income. He also states that he intends to live with his mother as her care giver.

The defendant mentions that he has two children who are now 17 and 15 years old who need their father's presence at this stage in their lives. He states that he is determined to take care of his mother and two sons. It is unclear who has been taking care of the minor children while their mother and father have been incarcerated.

Because this court does not find an extraordinary or compelling reason on any of the defendant's claims, there is no need for the court to further discuss the § 3553(a) factors.

## CONCLUSION

The court has carefully considered the totality of the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the foregoing reasons, the court determines that the defendant has not presented an extraordinary and compelling reason for a reduced sentence. The defendant's motion for compassionate release is respectfully denied (ECF No. 196).

IT IS SO ORDERED.

September 10, 2025                     Joseph F. Anderson, Jr.
Columbia, South Carolina               United States District Judge